CITIZENS FOR the MANAGEMENT OF
ALASKA LANDS, Plaintiff,

v.

DEPARTMENT OF AGRICULTURE and
Robert S. Bergland, Secretary,
Defendants.

Civ. No. J78–1.

United States District Court,
D. Alaska.

March 8, 1978.

James F. Clark, Robertson, Monagle, Eastaugh & Bradley, Juneau, Alaska, for plaintiff.

Alexander O. Bryner, U. S. Atty. for Alaska, and Milton L. Moss, Asst. U. S. Atty., Anchorage, Alaska, for defendants.

## MEMORANDUM AND ORDER

von der HEYDT, Chief Judge.

THIS CAUSE comes before the court on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss. At oral argument counsel acknowledged that these motions raise essentially the same points of law and therefore they will be considered together. The question raised by these motions present several complex issues of law in a factual setting of considerable importance to the citizens of this state.

Briefly stated this suit involves yet another skirmish in the continuing battle over the use of Alaska land under § 17(d)(2) of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1616(d)(2), commonly referred to as the d–2 controversy. Under that section certain lands in Alaska were made available for inclusion in various national lands systems. One of several bills introduced into this session of Congress to fulfill the mandate of § 17(d)(2) is H.R. 39. That resolution is presently under consideration by a subcommittee of the House of Representatives and has not yet been acted upon by the full House or Senate. A portion of H.R. 39 deals with lands in the Tongass National Forest, in Southeastern Alaska.

Simultaneous with consideration of H.R. 39 the United States Forest Service was eliciting comments from citizens and preparing a comprehensive study of land use in the Tongass National Forest. This effort was directed toward the preparation of the Tongass Land Use Management Plan (TLUMP).

On September 15, 1977, Assistant Secretary of Agriculture Cutler appeared before the House Interior subcommittee which was then conducting hearings on H.R. 39 and requested that the subcommittee defer its consideration of H.R. 39 as it related to the Tongass National Forest until TLUMP was completed. The subcommittee at that time did not require Secretary Cutler to present the administration's position on that portion of H.R. 39. The TLUMP presently is slated for completion in June, 1978.

At the present time the pleadings and evidence do not show that any further requests were made of the Secretary by Congress. However, following an interagency review of the administration's proposals, on February 1, 1978, the defendant made a recommendation to Congress. The letter of transmittal from Secretary Bergland to Congressman Seiberling began, "In response to your request and as followup to our testimony of July and September 1977, here is our report on section[s] . . . of Committee Print No. 2 of H.R. 39 . . .."

Plaintiff seeks an injunction requiring the Secretary to withdraw this report pending completion of the TLUMP. The bases for the injunction which is sought are 16 U.S.C. § 1604(d), The Forest and Rangeland Renewable Resources Planning Act (RPA), and 42 U.S.C. § 4332(2)(C), The National Environmental Policy Act, NEPA.

In general terms the RPA requires the Secretary to hold public hearings on land management plans. It was apparently in response to the RPA that public input was elicited on the TLUMP.

The section of NEPA relied upon requires an environmental impact statement (EIS) on every "recommendation or report on proposals for legislation . . . .." The thrust of plaintiff's complaint is that in making the report to Congress without an

EIS that the Secretary has violated this NEPA requirement.

Various issues are raised by the defendant including standing and justiciability. As the court concludes that the political question "doctrine" precludes one of the theories of relief and the others fail to state a claim upon which relief can be granted the question of standing is not passed upon.[1]

■ In order to require an EIS under NEPA the information transmitted must be a recommendation or report on proposals for legislation. Plaintiff concedes "that information regarding matters under Congressional inquiry can and must be provided to Congress by agencies when asked." (Pls. brief p. 25). Thus, if this report is seen as information on pending legislation, plaintiff concedes that it must be transmitted.

Plaintiff, however, initially requests the court to find that "under the guise of responding to a Congressional request, defendants are seeking by their own act to short-circuit the public input and EIS requirements by providing recommendations regarding land allocations in the Tongass prior to completion of the TLUMP." (Pls. br. p. 26). In short, plaintiff requests the court to find that the February 1, 1978, transmittal was not a report on legislation then pending, H.R. 39, but rather was a report on agency proposed legislation. This is a step which the court cannot take.

■ The political question doctrine has been described as no doctrine at all, but rather a group of quite different questions which have been characterized as political. *See* 13 Wright & Miller, *Federal Practice and Procedure*, § 3534, p. 298. This court perceives any attempt to reach the underlying motivation of the Secretary in transmitting this report prior to the completion of the TLUMP as a direct infringement of the judiciary into a discussion of a political nature between the executive and legislative branches of government. The inquiry alone, regardless of outcome, strikes the court as overly intrusive into the political sphere and in complete derogation of the doctrine of separation of powers. *Chamber of Commerce v. Dept. of Interior*, 439 F.Supp. 762, 767 (D.D.C.1977). *See generally Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

On an alternative tack, plaintiff urges that even if the recommendations were ones which Congress requested and the Administration were required to give that an EIS would be necessary. For that proposition it cites *Sierra Club v. Morton*, 395 F.Supp. 1187 (D.D.C.1975). In that case the court held that budget proposals for financing the National Wildlife Refuge System were recommendations or reports on proposals for legislation requiring an EIS under NEPA.

■ Plaintiff states that the result in that case surely would have been the same had the budget request have been elicited in response to a committee request rather than initiated by the agency. The situation is not analogous. Under 31 U.S.C. § 11 the head of each federal agency must prepare a request for appropriations to be submitted by the President to Congress. Thus, any Congressionally initiated budget requests would be highly suspect. In the present case, however, both political branches of the government have similar responsibility in presenting legislation and there is no such obvious evidence of bad faith. The court would further note the fact that even in the case posited by plaintiff the court probably would not require an EIS. Compare Judge Pratt's decisions in *Sierra Club, supra,* and *Chamber of Commerce, supra*. Hence, the court concludes that the Secretary is not required to prepare an EIS in the present situation for responses to Congressional inquiries.[2]

1. In general the court would indicate its agreement with plaintiff's contentions on standing. *See Atchison, T. & S. F. Ry. Co. v. Callaway*, 431 F.Supp. 722 (D.D.C.1977); *but see Wingfield v. Office of Management and Budget*, Civ. No. 77–489 (D.D.C. April 4, 1977); *Chamber of Commerce v. Department of Interior*, 439 F.Supp. 762 (D.D.C.1977).

2. The court notes that this holding is in accord with pending CEQ guidelines, Fed.Reg. April 5, 1977, p. 18111, which when effective are accorded great weight. *Sierra Club, supra*.

As a final matter the court is unsure as to the effect plaintiff hopes to receive from the requested injunction. If, as it appears, the thrust of this action is to put Congress on notice that no adequate EIS has been prepared, that function has been fulfilled by the letter of transmittal specifically so stating. Thus, Congress is not being led to believe that all environmental factors have been considered nor that public input has been finalized. Any injunction or declaratory relief merely reiterating that fact would not benefit these plaintiffs. *Cf. Virginian Ry. v. Federation*, 300 U.S. 515, 550, 57 S.Ct. 592, 81 L.Ed. 789 (1937); *Elliott v. Amalgamated Meat Cutters*, 91 F.Supp. 690, 698 (W.D.Mo.1950).

To the extent that this complaint seeks relief independent of NEPA the plaintiff has failed to state a claim upon which relief can be granted under 16 U.S.C. § 1604(d).

Accordingly, IT IS ORDERED:

1. THAT plaintiff's motion for preliminary injunction is denied.

2. THAT defendants' motion to dismiss is granted. This cause is dismissed without prejudice.